IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

SANDRA L. MULLINS,

      Plaintiff,

v.                        CASE NO. 2:07-00570

MICHAEL J. ASTRUE,
Commissioner of Social Security[1],

      Defendant.


**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court are cross-motions for judgment on the pleadings.[1]

Plaintiff, Sandra L. Mullins (hereinafter referred to as "Claimant"), filed an application for DIB on June 8, 2005, alleging

---

[1] The court reminds the parties that pursuant to Local Rule of Civil Procedure 9.4(a), Plaintiff should file "a brief in support of the complaint," while Defendant files "a brief in support of the defendant's decision." Local Rules of the United States District Court for the Southern District of West Virginia, Local Rule of Civil Procedure 9.4(a).

disability as of September 17, 2003, due to a back injury with pain, arthritis in both knees and degenerative joint disease in both hips. (Tr. at 47, 56, 76-77.) The claim was denied initially and upon reconsideration. (Tr. at 15, 47-49, 52-54.) On February 1, 2006, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 46.) The hearing was held on September 18, 2006, before the Honorable John Murdock. (Tr. at 15, 312-343.) By decision dated March 8, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-22.) The ALJ's decision became the final decision of the Commissioner on July 18, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 4-7.) On September 13, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2006). If an individual is found "not disabled" at any

2

step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2006).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v.

3

Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 17.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairment of lumbosacral strain/sprain. (Tr. at 17.) At the third inquiry, the ALJ concluded that Claimant's impairment does not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18.) The ALJ then found that Claimant has a residual functional capacity for less than the full range of work at the sedentary exertional level, reduced by nonexertional limitations. (Tr. at 18-20.) As a result, Claimant cannot return to her past relevant work. (Tr. at 20-21.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as parking building cashier, telephone order clerk, and surveillance-system monitor, which exist in significant numbers in the national economy. (Tr. at 21-22.) On this basis, benefits were denied. (Tr. at 22.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular

4

conclusion. It consists of more than a mere
scintilla of evidence but may be somewhat less
than a preponderance. If there is evidence to
justify a refusal to direct a verdict were the
case before a jury, then there is 'substantial
evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting
Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).
Additionally, the Commissioner, not the court, is charged with
resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d
1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not
abdicate their traditional functions; they cannot escape their duty
to scrutinize the record as a whole to determine whether the
conclusions reached are rational." Oppenheim v. Finch, 495 F.2d
396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the
Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was forty-two years old at the time of the
administrative hearing. (Tr. at 315.) Claimant has a high school
education. (Tr. at 315.) In the past, she worked as a certified
nursing assistant ("CNA") and as an emergency medical technician-
basic ("EMT-B"). (Tr. at 315.) She is also trained as a dental
assistant. (Tr. at 316.)

The Medical Record

The court has reviewed all evidence of record, including the
medical evidence of record, and will summarize it briefly below.

On September 17, 2003, Claimant injured her back while lifting and transferring a nursing home resident from a wheelchair to a bed.  (Tr. at 317.)

On September 18, 2003, Claimant sought treatment at the emergency room ("ER"). (Tr. at 160.)  At that time, Claimant underwent x-rays of the lumbosacral spine.  A radiology report from Samuel Davis, M.D., stated that the x-rays showed no abnormalities with the exception of arthritic and degenerative changes. Specifically, the x-rays showed

> [m]inimal anterior and lateral osteophyte formation... Lumbar vertebral bodies are otherwise intact.  L4-5 intervertebral disc space is narrowing. Remaining lumbar intervertebral disc spaces are maintained.  Curvature and alignment of the lumbar spine is normal.  No spondylolysis or spondylolisthesis is seen.  Sacroiliac joints are intact bilaterally.

(Tr. at 175.)

On September 18, 2003, Claimant was discharged from the ER. In the discharge instructions, Claimant was asked to follow up with H. S. Ramesh, M.D. in five to seven days.  (Tr. at 171.)

On September 25, 2003, Claimant underwent a consultative examination by H. S. Ramesh, M.D., where she reported low back pain radiating into the right hip and thigh, but no leg weakness.  (Tr. at 132.)  The examination revealed tenderness and reduced range of motion in the lumbar spine, but negative straight-leg raising tests, normal range of motion of the hips, knees, and ankles, with slightly diminished upper and lower extremity muscle strength at 4-

6

5/5.  Dr. Ramesh noted Claimant could not walk on her toes or heels or squat because of low back pain.  (Tr. at 135.)

Dr. Ramesh recommended physical therapy three times per week for four to six weeks, a TENS unit for pain management, and pain medication (Daypro, Zanaflex, and Vicodin) for thirty days.  (Tr. at 136.)  He further recommended that Claimant follow up in one week for lumbosacral trigger point injection and return to work on September 29, 2003 with modified duty of lifting, pushing, or pulling no more than ten pounds (light duty).  (Tr. at 131, 136.)  He noted Claimant's height as 4' 11" and her weight as 175 pounds.  (Tr. at 134.)  Claimant testified that a TENS unit was never issued to her.  (Tr. at 326.)

On October 2, 2003, Dr. Ramesh injected Claimant with right lumbosacral trigger points.  (Tr. at 130.)  He recommended Claimant return to work on October 3, 2003 with modified lifting, pushing, pulling no more than ten pounds (light duty).  He recommended follow up in two weeks.  (Tr. at 129.)

On October 18, 2003, Claimant went to the ER.  The nursing record indicates Claimant was seen one month earlier for the same thing, lower back pain.  The report notes Claimant is not in acute distress and is currently going to physical therapy.  (Tr. at 138.)  A discharge summary of the same date diagnoses chronic back pain and advises Claimant to continue with home medications and physical therapy.  (Tr. at 147.)  Claimant was further advised to follow up

7

with Dr. Ramesh in two days.  (Tr. at  148.)

On October 20, 2003, Nunzio P. Pagano, D. C., of Glenelg
Chiropractic, examined Claimant in connection with her worker's
compensation claim.  He noted Claimant was 4' 11" and 173 pounds.
(Tr. at 207.) He stated Claimant "appears to be experiencing a good
deal of pain.  Has trouble assuming the up-right posture from a
seated position...  After she had tears in her eyes, some tests
were not performed.  She stated that she was unable to work due to
pain even though her director modified her job." (Tr. at 209.)  He
concluded Claimant would be treated using conservative methods,
would be taken off work for two to three weeks, and that a lumber
MRI would be scheduled.  (Tr. at 210.)

On October 27, 2003, Claimant underwent an MRI of the lumbar
spine.  The radiology department report concluded that "[t]here is
degenerative disc disease L1-2 and in the lower thoracic area seen.
There is no evidence here for disc herniation or spinal canal
stenosis.  Impression: Degenerative disc disease thoracolumbar area
superiorly as above." (Tr. at 181.)

On October 31, 2003, Claimant underwent an x-ray of the spine.
Radiologist Rano Solidum Bofill, M.D. reported "[v]isualized views
of vertebral spine shows no gross fracture or dislocation.
Curvature is within limits.  Intervertebral body height is intact.
Impression:  Grossly negative."  (Tr. at 288.)

On November 13, 2003, Stephen M. Wolford, D. C., of Glenelg

Chiropractic, provided a low back examination form in connection
with Claimant's workers' compensation claim. (Tr. at 282-87.)  In
an addendum to the form dated November 13, 2003, Dr. Wolford states
that he obtained the lumbar spine MRI dated October 27, 2003.  He
stated that Claimant "was started under spinal adjustment and
physiotherapy modality treatment about three weeks ago.  She admits
this is helping." (Tr. at 280.)

On December 18, 2003, Dr. Wolford provided a low back
examination form in connection with Claimant's workers'
compensation claim. (Tr. at 275-79.)  In an addendum to the form
dated December 18, 2003, Dr. Wolford states Claimant has "improved
modestly but is still symptomatic in her low back and right thigh
and leg." (Tr. at 273.)  He notes Claimant "uses a combination
variously of pain medicines given by her family physician, Dr.
Jungo, including Vicodin and Daypro, a narcotic and prescription
NSAID.  She also takes Tylenol occasionally."  He states that he
made Claimant an appointment for a neurosurgical consultation.
(Tr. at 273.)

On January 8, 2004, Claimant was examined by James D.
Weinstein, M.D., a neurosurgeon.  Dr. Weinstein found Claimant had

> positive straight leg raising at about 70-80° on the
> right. I reviewed the patients (sic) MRI... I didn't see
> any gross pathology.  Certainly there is nothing there
> where I could see that would demand back surgery.  I am
> not sure what is going on.  I presume she has lumbar
> strain and sprain with nerve root irritation, and she
> should be treated for this by various conservative
> measures including physical therapy and whatever you can

do symptomatically.  I am giving her some exercises to
do.  Sooner or later if she keeps having these symptoms
she probably needs an abdominal pelvic CT scan to make
sure there is no intra-pelvic affects on the lumbosacral
plexus that might be causing her symptoms.  I don't think
so, but as a last resort that test can be done.

(Tr. at 176.)

On January 29, 2004, Dr. Wolford provided a low back
examination form in connection with Claimant's workers'
compensation claim. (Tr. at 265-270.)

On March 4, 2004, Dr. Wolford provided another low back
examination form in connection with Claimant's workers'
compensation claim. (Tr. at 259-64.)

On March 29, 2004, Claimant underwent a CT scan of the abdomen
and pelvis.  The radiology department report concluded that "[t]he
liver, pancreas and spleen were normal.  There was no abnormality
relative to the adrenal glands.  The kidneys were normal.  There
was no abnormality or pelvic masses or cysts.  Sections through the
pelvis reveal no abnormality.  Impression:  Normal examination."
(Tr. at 178-79.)

On April 8, 2004, Dr. Wolford, provided a low back examination
form in connection with Claimant's workers' compensation claim.
(Tr. at 251-56.) In an addendum to the form, he noted Claimant

is still trying to walk at least a mile each day.  She
says sometimes she has to break it up into at least 2-3
segments, but she is walking each day.  She continues
treatment at this office by physiotherapy modalities and
spinal adjustment.  Her PCP gives Vicodin and DayPro for
pain and inflammation.  She is not MI.  She can not work
at her regular job as a CNA.  She continues TTD.  As you

10

> may recall, the neurosurgeon saw her in early January and
> found that she had no operable pathology and the
> conservative route was treatment of choice... As no
> surgical pathology is identified, please authorize
> chiropractic treatment at a frequency of three times per
> week, for eight weeks, total of 24 treatments.

(Tr. at 257.)

On May 7, 2004, Dr. Wolford provided a low back examination
form in connection with Claimant's workers' compensation claim.
(Tr. at 243-48.)  In an addendum to the form, he noted that
Claimant was scheduled to see Dr. Michael Condaras for an
independent medical examination ("IME").  (Tr. at 249.)

On May 24, 2004, Michael R. Condaras, D. C. examined Claimant
and reviewed her medical records in connection with Claimant's
workers' compensation claim.  He noted Claimant's height as 5' 0"
and her weight as 186 pounds.  (Tr. at 184.)  He opined Claimant
had reached maximum medical improvement with regard to further
chiropractic care and recommended an 11% whole-person impairment
for the lumbar spine.  (Tr. at 185.)

On June 17, 2004, Dr. Wolford provided a low back examination
form in connection with Claimant's workers' compensation claim.
(Tr. at 235-40.)  In an addendum to the form, he stated that based
on Claimant's representations to him of Dr. Condaras' IME that
Claimant should "go ahead and pursue her options with vocational
rehabilitation.  In the meantime, we will continue treating her
symptomatically and I will recheck periodically to update."  (Tr.
at 241.)

11

On July 22, 2004, a State agency medical source completed a Functional Capacity Evaluation ("FCE") and opined that Claimant had a sedentary/light physical demand level ("PDL").  (Tr. at 213.) The examiner recommended she participate in a four to six week work conditioning program in order to increase her PDL to light or light/medium.  (Tr. at 214.)  The examiner summarized that "[o]verall test findings, including clinical observations and pen and paper tasks suggests the presence of poor psychodynamics and symptom magnification." (Tr. at 220.)

On August 31, 2004, a State agency medical source stated Claimant was currently involved in a work conditioning program for a total of three weeks.  The physical therapist stated that Claimant had increased her visits to four times per week and was achieving 95% of all goals in her program.  The physical therapist further noted that "[t]he patient was experiencing increased pain in the initial stages of the program; however, she has modified her program and technique to decrease pain." (Tr. at 212.)

On September 29, 2004, a State agency medical source stated in a discharge note that Claimant had completed three weeks of work conditioning and achieved 90% of all goals in the program.  The discharge note stated that "[p]atient has called to inform us she wants to discontinue work conditioning at our clinic and continue work conditioning at a clinic closer to her home." (Tr. at 211.)

On October 29, 2004, Dr. Wolford provided a low back

12

examination form in connection with Claimant's workers' compensation claim. (Tr. at 229-34.)   He recommended she be released for vocational rehabilitation.  (Tr. at 232.)

On December 5, 2004, Dr. Wolford provided a verification of temporary total disability ("TTD") form in connection with Claimant's workers' compensation claim.  He stated that Claimant "will not return to her former job as a CNA.  She feels unable to lift residents.  She failed attempt at work hardening/conditioning. She will need vocational rehabilitation."  (Tr. at 228.)

On January 7, 2005, Dr. Wolford provided a low back examination form in connection with Claimant's workers' compensation claim.  (Tr. at 223-26.)  Dr. Wolford noted Claimant was not currently prescribed prescription pain medication.  (Tr. at 226.)

In an addendum to the low back form, dated January 15, 2004 (sic), Dr. Wolford states that Claimant has been unable to return to her work as a CNA and not able to complete a work conditioning program. He concludes that "an FCE to determine PDL is appropriate and then I think she should pursue her options with Vocational Rehabilitation.  Again, she is released to participate in any activity and without restrictions pursuant to participation in an FCE and Vocational Rehabilitation.  She has not been seen at this office for treatment since 10/04/04 for pain control."  (Tr. at 271.)  The 2004 date of the report is obviously a typographical

13

error and should be 2005, in light of the date of the exam being January 7, 2005.

On January 13, 2005, Dr. Wolford faxed a memorandum to Shane Jividen, MA, QRP, directing a FCE to determine Claimant's PDL and work conditioning following the FCE "if indicated and appropriate." (Tr. at 272.)

On February 17, 2005, Arthur J. Smith, Jr., PT, completed a FCE Report for Dr. Wolford.  He opined that Claimant's PDL was sedentary overall and light for occasional material handling activities with an occasional ability to sit, squat, overhead reach, climb, minimal kneel and bend, never crawl.  The FCE noted no symptom magnification. (Tr. at 302-05.)

On April 18, 2005, Arthur J. Smith, Jr., PT, completed a Work Hardening/Work Conditioning Report for Dr. Wolford.  The report concluded that the "[c]urrent status appears compatible with 2-4 hour work day at sedentary PDL.  Comments:  Claimant attended initial 3 Work Conditioning (WC) sessions as scheduled 03/29/2005, 03/31/2005 and 04/01/2005.  Claimant cancelled 04/04/2005 session noting she had no money for gasoline for transportation.  Claimant has not returned to WC since 04/01/2005."  (Tr. at 299.)

On August 2, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work with an occasional ability to climb, balance, stoop, kneel, crouch and crawl, a need to avoid

14

concentrated exposure to hazards, extreme cold, extreme heat, wetness, humidity and vibration. (Tr. at 289-98.)

On August 21, 2006, a Social Security Administration Office of Disability Adjudication and Review form lists Claimant's medications as "Alieve (sic) for pain and swelling.  A glass of wine before bed to help sleep and for pain during night time.  Dr. Pagano doesn't write pain meds and suggest (sic) alternative (sic) to meds."  (Tr. at 127.)

On September 1, 2006, a Social Security Administration Office of Disability Adjudication and Review form lists Claimant's medications as "Alieve (sic) for pain and swelling.  Glass of wine before bed.  Doctors at Glenelg don't write pain meds and try alternative (sic) to them."  (Tr. at 128.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ's hypothetical question posed to the vocational expert did not include all of Claimant's limitations; specifically, pain, obesity, and psychological limitations; (2) the ALJ failed to afford adequate weight to the opinions of examining and non-examining physicians when considering Claimant's chronic pain; and (3) the ALJ failed to afford appropriate weight to the opinion of Claimant's treating chiropractor. (Pl.'s Br. at  2-11.)

The Commissioner argues that (1) the ALJ's hypothetical

question posed to the vocational expert accounted for Claimant's medically determinable limitations; (2) the ALJ correctly evaluated Claimant's complaints of chronic pain in accordance with the Regulations; and (3) the ALJ properly afforded less weight to Dr. Wolford's opinion because, as a chiropractor, he was not an acceptable medical source under the regulations. (Def.'s Br. at 6-15.)

Hypothetical Question

Claimant first takes issue with the ALJ's hypothetical questions posed to the vocational expert. Claimant argues that the ALJ erred in failing to include all of Claimant's limitations; specifically, obesity, pain and psychologically related pain limitations, such as an inability to sustain a routine for extended periods. (Pl.'s Br. at 3-6.) Claimant asserts that the ALJ should have adopted the two hypothetical questions of Claimant's counsel that included Claimant's limitations as a result of Claimant's pain syndrome, in response to which the vocational expert found no jobs available. (Pl.'s Br. at 6.)

The ALJ posed these hypothetical questions:

[A]ssume a person age forty-one with a high school education. Further assume I find the person capable in the first set of questions of a range of light work, in the second question a range of sedentary work. Everything is the same except for the exertion levels in all the questions except in the light questions I'd like you to assume in the first place just straight out light, in the second, I'd like you to assume an unlimited sit/stand option at the worker's option, and in the third light scenario being able to alternate standing or

16

> sitting, standing or sitting at 30-minute intervals. So,
> in other words, not quite at the person's option. Now,
> with all that as the variables, then everything else is
> the same and that is that the positions should never
> require what I call industrial climbing ropes, ladders,
> and scaffolds. All the other posturals should only be
> required occasionally, that is other climbing, balancing,
> stooping, kneeling, crouching, and crawling. Should
> avoid vibration and hazardous machinery and heights; and
> I'd ask if there would be any positions for such a
> person?... I'm assuming in general that these would be
> unskilled, entry-level positions.

(Tr. at 336-37.)

Claimant's attorney's first hypothetical question was "[I]f someone would due to pain have to miss one day of work per week, would you still be able to name those jobs?" (Tr. at 341.) The vocational expert responded "Not at the unskilled level, no." (Tr. at 341.) Claimant's attorney's second hypothetical question was "If someone could only work two to four hours a day at a sedentary level as evidenced by Mr. Smith's report, would they still be able to do these jobs?" (Tr. at 342.) The vocational expert responded "My opinion individuals who work unskilled work at the entry level are going to be making relatively minimum income and in order to sustain gainful activity will have to work eight hours a day, 40 hours a week." (Tr. at 342.)

In his March 8, 2007 decision, the ALJ considered the hypothetical questions and concluded that

> The claimant's representative posed additional
> restrictions in which the vocational expert could
> identify no occupations. However, one restriction given
> was outside the definition of substantial gainful
> activity (inability to work more than two to four hours).

17

The other restriction given (missing one day a week due to pain) is not reasonable based on the objective medical evidence.

(Tr. at 22.)

Claimant argues that the ALJ erred in failing to consider that Claimant's obesity "poses additional limitations when considered in combination with her back pain, hip pain, and leg pain." (Pl.'s Br. at 4.)  Claimant's counsel at the administrative hearing asks the ALJ to note a "BMI of 35.3 percent." (Tr. at 329.)  The ALJ stated "I will take note of your having brought that to my attention at 3E to page 2 and, ask if there's anything else that would support that?" (Tr. at 329.)  At that time, the ALJ provides Claimant's counsel an opportunity to question Claimant but counsel did not question Claimant regarding her weight. (Tr. at 329-32.)  The court further notes that Claimant's brief does not cite to any medical determination regarding Claimant's alleged obesity or provide further explanation.  (Pl.'s Br. at 3-4.)

The Commissioner argues that at no time during the adjudication of the claim did Claimant allege that she was disabled based on obesity nor did any of her doctors identify obesity as an impairment for which she received treatment.  (Def.'s Br. at 13.)  "However, to the extent that her obesity resulted in functional limitations regarding her ability to sit, stand, and walk, as well as limitations in range of motion, the ALJ accommodated these when he restricted her to a limited range of sedentary work." (Pl.'s

Br. at 13.)

The court notes that the medical evidence of record indicates Claimant was four feet, eleven inches tall to five feet tall and generally weighed in the 173 to 186 pound range. (See, i.e., Tr. at 184, 207.)   Although Listing 9.09, the listing related to obesity, has been eliminated from the listings, obesity still must be considered in the sequential analysis.   See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00Q (2006) ("[W]hen determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.")   SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2002) (Obesity must be considered when evaluating impairments under the listings and when assessing a claim at other steps of the sequential evaluation process.).

The ALJ acknowledged Claimant's excessive weight when her attorney mentioned it.   Nowhere else in the record is there any mention by Claimant or her attorney that her obesity interfered with her ability to perform work.   The court proposes that the presiding District Judge find that there is no evidence, much less substantial evidence, to support a finding that Claimant's obesity was a severe impairment.   Moreover, the ALJ's residual functional

19

capacity finding adequately reflects any limitations related to obesity.

Claimant further argues that the ALJ erred in failing to consider Claimant's pain and her psychological impairments related to her pain, such as an inability to sustain a routine for extended periods. (Pl.'s Br. at 3-6.) Claimant asserts that her complaints of pain are well documented throughout the record and that she has been prescribed pain medications including Vicodin, Visteril, Nubain, and Daypro. (Pl.'s Br. at 4.) Claimant contends the ALJ's hypothetical questions understated Claimant's "pain limitations" and "psychological limitations." (Pl.'s Br. at 5-6.)

The Commissioner asserts that at no time during the administrative process did Claimant raise the issue of a mental impairment, nor is there evidence Claimant has a history of mental health treatment, nor does the medical record indicate that Claimant's doctors advised her to undergo mental health treatment. (Def.'s Br. at 12.) The Commissioner concludes that the ALJ did not include in the hypothetical question a limitation regarding the inability to sustain a routine for extended periods of time...(because) the record does not support a finding that Plaintiff would be unable to sustain a routine for extended periods of time." (Def.'s Br. at 13-14.)

The court proposes that the presiding District Judge find that the hypothetical question posed by the ALJ included those

20

limitations that were supported by substantial evidence of record. <u>Chrupcala v. Heckler</u>, 829 F.2d 1269, 1276 (3d Cir. 1987)(While questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record.). The ALJ's residual functional capacity finding related to Claimant's impairments reflected Claimant's limitations, including pain and the effect that her pain and her other symptoms would have on her ability to work, as supported by substantial evidence of record. These limitations were included in a hypothetical question, and the vocational expert identified a significant number of jobs that Claimant could perform.

<u>Claimant's Second Argument/Credibility Determination</u>

Claimant next takes issue with the ALJ's evaluation of Claimant's pain, asserting that Claimant's "psychological impairments, pain syndrome, and obesity" impose a greater degree of limitation on her ability to sustain employment than does her back injury alone. (Pl.'s Br. at 9.) The undersigned interprets this argument as one which disputes the ALJ's determination of Claimant's credibility.

The Commissioner responded that the ALJ properly evaluated her complaints. (Def.'s Br. at 10.)

In his decision, the ALJ determined that Claimant had medically determinable impairments that could cause her alleged

symptoms. (Tr. at 18.) The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain and other symptoms, precipitating and aggravating factors, Claimant's medication and side effects, and treatment other than medication. (Tr. at 17-20.) The ALJ explained his reasons for finding Claimant not entirely credible, including the objective findings, the conservative nature of Claimant's treatment, the lack of prescription pain medication, and her self-reported daily activities. (Tr. at 19-20.)

In his decision, the ALJ considered the evidence of record related to Claimant's impairments and concluded that her while lumbosacral strain/sprain was a severe impairment, she retained the functional capacity to perform a limited range of sedentary work. (Tr. at 17-18.) He reasoned that Claimant's daily activities are inconsistent with disabling pain, that there were no side effects from Claimant's over-the-counter pain medication which would preclude the performance of jobs identified by the vocational expert, that Claimant has had conservative treatment only with no intensification of treatment modalities and has not required surgery. (Tr. at 19-20.) The ALJ considered Claimant's evidence of impairment and found her statements concerning the intensity and limiting effects of her symptoms were not entirely credible:

> [t]he objective medical evidence does not support symptoms and limitations of severity testified to by the

22

claimant or a disabling impairment. The claimant
testified that she experiences daily pain at the seven to
eight levels with over-the-counter Aleve and worsened
pain with walking and prolonged standing. Yet, she
testified that her treating physician at Glenelg does not
prescribe pain medication. Her treating physician
reportedly prefers alternative treatment, such as
consuming a glass of wine before going to bed each night.
Notably, a treatment record from Stephen M. Wolford,
D.C., the claimant's treating chiropractor with Glenelg
Chiropractic, on January 21, 2005, reflects that the
claimant was not prescribed pain medications; however,
she had previously been prescribed medications (Daypro
and Vicodin)(Exhibit 8F-6). At the time of this visit,
the claimant was referred for vocational rehabilitation
(Exhibit 8F-6). During a work conditioning session on
April 1, 2005, the claimant reported pre-session pain at
the two level (Exhibit 11F-2).

　　Although the claimant testified that she falls at
least once each day due to instability of her right leg,
these falls are not documented by the objective medical
evidence. During a consultation by Dr. Ramesh on
September 25, 2003, as previously referenced, the
claimant reported tingling and numbness of her lower
extremities, but denied weakness of her legs (Exhibit 1F-
4).

　　A function report completed by the claimant on June
27, 2005, reflects that she prepared simple meals, did
laundry with assistance, walked, shopped on a bi-weekly
basis, paid bills, and had telephone conversations on a
daily basis (Exhibit 6E)...

　　The claimant underwent an MRI of her lumbar spine at
Summersville Memorial Hospital on October 27, 2003, which
showed degenerative disc disease at the L1-2 level and in
the lower thoracic area. The MRI showed no evidence of
disc herniation or spinal canal stenosis (Exhibit 4F-4).
The claimant subsequently underwent x-rays of her lumbar
spine at Glenelg Medical Center on October 31, 2003,
which revealed no abnormalities (Exhibit 8F-68). On
January 8, 2004, Dr. Weinstein, a neurosurgeon, as
previously referenced, noted that review of the
claimant's MRI showed no gross pathology (Exhibit 3F-1).

　　During a functional capacity evaluation at the
referral of Dr. Pagano, the claimant's treating
chiropractor, a previously referenced, on July 22, 2004,
the claimant's demonstrated physical demand capabilities
were at the sedentary to light demand levels...The
evidence reflects no side-effects from medications that

23

would preclude occupations identified by the vocational
expert.  The claimant is not prescribed pain medication;
she takes over-the-counter Aleve (testimony and Exhibit
15E).

(Tr. at 19-20.)

With respect to Claimant's argument that the ALJ wrongfully
discredited Claimant's subjective complaints of pain, the court
proposes that the presiding District Judge find that the ALJ
properly weighed Claimant's subjective complaints of pain and
properly assessed Claimant's credibility, in keeping with the
applicable regulations, case law, and social security ruling
("SSR") and that his findings are supported by substantial
evidence.  20 C.F.R. § 404.1529(b) (2006); SSR 96-7p, 1996 WL
374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir.
1996).

Treating Physician Opinion

Claimant also argues that the ALJ failed to afford appropriate
weight to the opinions of Claimant's treating "chiropractors and
physical therapist, who have opined she is unable to work above a
sedentary level, can work at a sedentary level for only 2-4 hours
per day, and is totally disabled, specifically for a period
prescribed by the Workers' Compensation award of 11% permanent
partial disability." (Pl.'s Br. at 10.)

The Commissioner asserts that in accordance with 20 C.F.R.
§404.1513(a), the ALJ properly afforded less weight to the opinions
of Dr. Wolford, a chiropractor, and Arthur Smith, a physical

24

therapist, as neither is an acceptable medical source under the regulations. (Def.'s Br. at 9.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. <u>See</u> 20 C.F.R. § 404.1527(d)(2) (2006). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." <u>Ward v. Chater</u>, 924 F. Supp. 53, 55 (W.D. Va. 1996); <u>see also</u>, 20 C.F.R. § 404.1527(d)(2) (2006). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) (2006).

The ALJ reviewed the evidence and found:

On November 5, 2004, Dr. Wolford, the claimant's treating chiropractor, opined that the claimant was temporarily totally disabled (Exhibit 8F-8). A chiropractor is not an acceptable source to establish a medically determinable impairment (20 C.F.R. 404.1513). Further, the objective medical evidence does not support Dr. Wolford's opinion. Dr. Wolford noted that the claimant had failed an attempt at work hardening; however, as previously noted, the claimant had achieved 90 percent of all goals when she was discharged on September 29, 2004, to undergo work conditioning at a clinic closer to her home (Exhibit 7F-1). During the functional capacity evaluation on July 22, 2004, the claimant's demonstrated physical capabilities were at the sedentary to light levels, which is not consistent with a disabling impairment (Exhibit 7F-3 to 7F-10).

> On April 18, 2005, Arthur J. Smith, Jr., a physical therapist...found that the claimant's physical demand level was sedentary for two to four hours each day. Mr. Smith reached this conclusion based on three work conditioning sessions from March 29, 2005 to April 1, 2005 (Exhibit 10F)...The undersigned concurs with Mr. Smith's opinion that the claimant retains the residual functional capacity to perform work at the sedentary exertional level, but finds that this can be performed for an eight-hour workday in contrast to two to four hours as noted by Mr. Smith on one occasion. Further, a physical therapist is not an acceptable source to establish a medically determinable impairment (20 C.F.R. 404.1513).
>
> The objective medical evidence supports more significant exertional limitations and more significant limitations with climbing of ladders, ropes, and scaffolds than shown by the reviewing state agency physicians. Further, the evidence reflects more significant environmental limitations (vibration and hazards) than shown by the reviewing state agency physicians (Exhibit 9F). Little weight is given to these opinions (SSR 96-6p).

(Tr. at 20.)

As noted by the ALJ, Dr. Wolford, a chiropractor, and Mr. Smith, a physical therapist, are not "acceptable medical sources" whose medical opinions must be considered and weighed pursuant to the provisions contained at 20 C.F.R. § 404.1527 (2006). Instead, they are considered an "other sources" whose opinion may be considered by the Commissioner. 20 C.F.R. § 404.1513(d) (2006). See 20 C.F.R. § 404.1513 (2006) (defining "acceptable medical sources" and "other sources"); see also 20 C.F.R. § 404.1527 (2006) (explaining that "medical opinions" are statements from acceptable medical sources, which must be weighed according to a number of listed factors).

26

Even applying the factors identified at 20 C.F.R. § 404.1527, Dr. Wolford's and Mr. Smith's opinions are not supported by treatment notes or any clinical and laboratory diagnostic techniques nor are they consistent with the remaining substantial evidence of record. See 20 C.F.R. § 404.1513(d)(3) (medical opinions are entitled to more weight where they are supported by medical signs and laboratory findings); see also 20 C.F.R. § 404.1513(d)(4) (medical opinions are entitled to more weight where they are consistent with the record as a whole).

The court proposes that the presiding District Judge find that the ALJ's weighing of this evidence also is in keeping with the applicable regulations at 20 C. F. R. §§ 404.1527(d)(2006) and is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding Chief District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Joseph R. Goodwin. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation

within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

_____January 27, 2009_____
    Date

_Mary E. Stanley_
Mary E. Stanley
United States Magistrate Judge

28